✓ FILED ___ LODGED
___ RECEIVED ___ COPY

OCT - 5 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

James David Kline

5633 East 18th Street

Tucson, AZ 85711

520-270-9566

jdavidkline8@gmail.com

Self-represented

CV-26-00536-TUC-JGZ--LCK

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

James David Kline,

Petitioner,

v.

Tucson City Prosecutor's Office,

Respondent,

✓ FILED ___ LODGED
___ RECEIVED ___ COPY
OCT - 5 2026
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

and

The Attorney General of the State of Arizona,

Additional Respondent.

CV-26-00536-TUC-JGZ--LCK

Case No. ____________________

(To be assigned by the Clerk)

**PETITION UNDER 28 U.S.C. § 2254FOR A WRIT OF HABEAS CORPUS**

**BY A PERSON IN STATE CUSTODY** (NON-DEATH PENALTY)

**PRELIMINARY NOTE REGARDING FORMAT AND APPELLATE ROUTE**

LRCiv 3.5(a) permits an adapted § 2254 petition when the petition is understandable and conforms with federal and local requirements. This petition follows the Court's prescribed form as closely as possible while accounting for the particular and extraordinary

circumstances of the underlying case. The form assumes confinement in a prison or jail and asks about a direct appeal to the Arizona Court of Appeals. Neither assumption describes CM25002372: the restraint is unsupervised municipal probation, and the direct appeal proceeded from Tucson City Court to Pima County Superior Court. (Tucson City Court Case Summary, "Probation Information"; State's Appellee's Answering Memorandum, caption and p. 5 (Nov. 5, 2025); Tucson City Court Case Summary, Register of Action, appellate-result entry.)

The petition names the Tucson City Prosecutor's Office as Respondent and the Attorney General of the State of Arizona as Additional Respondent. No individual probation officer is assigned under the unsupervised municipal probation sentence. The City Prosecutor's Office prosecuted the case and represented the State in the direct appeal and post-conviction proceedings. If the Court determines that Rule 2(a) of the Rules Governing Section 2254 Cases

requires an official other than those named in the caption, leave to add or substitute that official is requested.

"Defendant" refers to the individuals' status in the related federal civil-rights action concerning the underlying criminal conviction, identified in Question 13.

Under A.R.S. § 22-375, further direct appeal from a Superior Court decision in a municipal-court case is generally unavailable unless the action involves the validity of a statute or another matter specified in that section. The challenge here concerns the application of A.R.S. § 13-2904(A)(1) to the recorded conduct, not the statute's facial validity. Pima County Superior Court was therefore the final court in the available direct-appeal route.

The case information and procedural history below identify the recorded dispositions, restraint, direct appeal, and post-conviction

proceedings. The grounds that follow place the records alongside the governing federal law.

**PETITION**

**1. (a) Court and location:**

Tucson City Court, Tucson, Arizona (Tucson City Court Case Summary,
case heading).

**(b) Criminal case number:**

CM25002372, shown as M1041CM25002372 on the Tucson City Court Case Summary (Tucson City Court Case Summary, case heading).

**2. Dates of recorded dispositions:**

The Tucson City Court Case Summary lists the following dispositions for the single charge in CM25002372:

August 7, 2025 — Code 11, "Plea of Guilty or Responsible, Sentence Imposed."

December 30, 2025 — Code 21, "Judgment of Guilty or Responsible, Sentence Imposed."

The same Case Summary's Register of Action contains no entry dated August 7, 2025, documenting a plea, trial, verdict, or sentencing. Its separate disposition fields nevertheless assign that date Code 11.

Defendant Maldonado in her October 31 document expressly confirms that Kline "entered a plea of not guilty" and that "The Court entered a judgment of guilt at trial," attributing their omission from the August 7 sentencing minute entry to "clerical error." Neither the recorded proceeding nor the October 31 document identifies a guilty plea.

(Trial Audio [06:19–06:33; 01:34:07–01:34:25]; Tucson City Court, Sentencing Minute Entry, Aug. 7, 2025; Orders of the Court, Oct. 31, 2025; Tucson City Court Case Summary, "Charge/Citation Detail," "Disposition History," and "Register of Action.")

**3. Was more than one count or crime involved?**

No. The Case Summary lists one count and one citation, C25022385 (Tucson City Court Case Summary, "Charge/Citation Detail").

**4. Charge:**

Disorderly conduct under A.R.S. § 13-2904(A)(1) (Tucson City Court Case Summary, "Charge/Citation Detail"; State's Appellee's Answering Memorandum, p. 1 (Nov. 5, 2025), describing the amendment from § 13-2904(A)(3) to § 13-2904(A)(1)).

**5. Sentence and conditions recorded:**

The August 7, 2025 sentencing minute entry lists a $2,500 fine with $2,000 suspended, leaving a $500 fine; a $20 time-payment fee; payments of $25 per month beginning September 15, 2025; and twenty-four months of court/unsupervised probation (Tucson

City Court, Sentencing Minute Entry, Aug. 7, 2025, p. 1). It also lists conditions to violate no laws; have no contact with [REDACT REDACT] and Zulma Cuevas; not return to the victims' residence or work; and a non-standard, unpronounced probation condition "Do not fly a drone over the victims' residence"

As acknowledged by The State in footnote 3 of its answering memorandum as follows: "The written sentencing order includes that Kline shall not fly drones over the victims' residence. The trial court omitted this condition during its oral pronouncement." State's Appellee's Answering Memorandum, p. 5 n.3 (Nov. 5, 2025).

Defendant Maldonado made what was represented as the August 7 oral pronouncement and signed what was represented as the August 7 sentencing minute entry. Defendant Maldonado also issued the ,void post divestment October 31, 2025 document purporting to correct what she characterized as "clerical error"

concerning what she referred to as the "omitted" plea and judgment in that minute entry. The October 31 document did not address or remove the drone condition Defendant Maldonado herself had NOT pronounced. (Tucson City Court, Sentencing Minute Entry, Aug. 7, 2025, p. 1; Tucson City Court, Orders of the Court, Oct. 31, 2025).

The Tucson City Court Case Summary records the twenty-four-month unsupervised probation period imposed on August 7th 2025 as beginning December 30, 2025, and ending December 30, 2027. The date (Tucson City Court Case Summary, "Probation Information").

**6. (a) Plea:**

Not guilty. Defendant Maldonado identified Kline's plea as not

guilty at the August 7, 2025 bench trial, and her October 31 document confirms that plea. The August 7 document represented as the sentencing minute entry left its Plea field blank (an impossibility in contemporaneous data entry). The Case Summary's Register of Action does not record a guilty plea or anything at all on August 7. Yet the same Case Summary assigns that date Code 11, "Plea of Guilty or Responsible, Sentence Imposed," for the single charge. No guilty plea was entered. (Trial Audio [06:19–06:33]; Tucson City Court, Sentencing Minute Entry, Aug. 7, 2025; Orders of the Court, Oct. 31, 2025; Case Summary, "Charge/Citation Detail," "Register of Action," and "Disposition History.")

**(b) Different pleas to different counts:**

Not applicable. The Case Summary lists one count and one citation, C25022385 ("Charge/Citation Detail").

**(c) Trial:**

Judge only (Defendant Maldonado, event represented as bench trial), August 7, 2025. The August 7 document represented as the sentencing minute entry has "Bench Trial" checked, and the court's recording preserves the proceeding. The Case Summary's Register of Action records the June 24 trial setting but contains no entry documenting the trial, verdict, or sentencing on August 7. Its separate disposition fields nevertheless assign that date Code 11, "Plea of Guilty or Responsible, Sentence Imposed." (Tucson City Court, Sentencing Minute Entry, Aug. 7, 2025, p. 1; Trial Audio, Aug. 7, 2025; Tucson City Court Case Summary, "Register of Action," "Charge/Citation Detail," and "Disposition History.")

**7. Did you testify at the trial?**

No. After being denied, an attorney Mr. kline acted as his own defense, brought out the incident facts by questioning witnesses and presenting the body-worn-camera recording. He had no defense attorney to examine him and develop his account under oath or impeach untruthful prosecution witness testimony. Had he taken the stand, he would have been subject only to questioning by Defendant D'arquea acting as the prosecution.

**8. Direct appeal**

Yes. The direct appeal from Tucson City Court proceeded to Pima County Superior Court, Case No. CR20255329-001. Under A.R.S. § 22-375, this appeal concerning the application of A.R.S. § 13-2904(A)(1), rather than the statute's validity, ended in Superior Court as the available ordinary direct-appeal route.

**(a) Date filed and proceedings leading to the result:**

A Notice of Appeal was in a timely manner on August 15, 2025, and the Appellant's Opening Memorandum filed on September 29, 2025. The State's answering memorandum was due October 29, 2025.

On October 27, Defendant Hammock requested an extension under Rule 8(b), citing workload and understaffing. The rule required good cause for additional time. The Arizona Court of Appeals' published criminal-appeals policy states that conclusory assertions of "scheduling conflicts" or "other work" do not constitute good cause. Defendant Klotz granted the request on October 27, the same date the State's certificate of service says the motion was mailed to Kline.

The October 29 deadline expired without an answer. After Kline objected, Defendant Klotz vacated his October 27 grant. On November 3, he claimed to consider Defendant Hammock's request "anew" and made a second finding of good cause on the same grounds the Court of Appeals has repeatedly and expressly held do

NOT constitutegoodcause. He directed the State to file "without undue delay," setting no a date-certain deadline. The State filed its answering
memorandum on November 7, nine days after the only operative deadline. Rule 8(a)(2) provides that, when no appellee's memorandum is filed, the appeal is deemed submitted on the record and the appellant's memorandum; the rule does
not treat the absence of an answer as a confession of
error.

The State's answer exceeded Rule 8(a)(4)'s fifteen-page limit. Defendant Hammock submitted it as a three-document packet: the oversized answer, a motion asking leave to exceed the limit, and an unsigned, undated proposed order addressed to the "Honorable Division." Rule 8(a)(5) assigns authority to modify or waive the limit to the Superior Court. The packet contained no signed order from an identified judicial officer granting leave before the

oversized answer was filed. The proposed order did not itself grant leave.

The answer also mattered for its contents. It advanced the State's account of "growling" and following although the body-worn-camera account played at trial recorded the juvenile's "grr," and Defendant Sublette acknowledged that he documented her word as "growled." At the same time, the State expressly acknowledged in footnote 3 that the written August 7 sentence included a drone condition that Defendant Maldonado omitted from the oral pronouncement. The answer thus placed that sentencing discrepancy directly before Defendant Metcalf while defending the conviction and sentence.

Kline moved to strike the State's answer and challenged the extension. Defendant Hammock defended it as standard practice and cited a speedy-trial decision that did not

decide Rule 8(b)'s good-cause requirement for appellate briefing. In his November 18 ruling, Defendant Metcalf quoted the good-cause requirement but faulted Kline for failing to cite authority against generalized workload as good cause. The ruling described Defendant Klotz's initial grant as proper while recording that Defendant Klotz had vacated it. Defendant Metcalf denied the motion to strike. The late, oversized answer remained in the appeal. Kline filed an Appellant's Reply Memorandum.

Under the heading "Sufficiency of the Evidence" in his December 16 decision, Defendant Metcalf reviewed Defendant Maldonado's findings for clear error. He held that "substantial evidence" supported them and concluded: "Accordingly, this Court must defer to the factual findings of the trial court." His analysis accepted findings that did not establish fighting,

violent, or seriously disruptive behavior, a disturbance attributable to qualifying conduct, or the required intent or knowledge. It did not perform the element-by-element inquiry required by Jackson v. Virginia, 443 U.S. 307, 319 (1979).

The record before Defendant Metcalf included Defendant Sublette's report; the body-worn-camera account played at trial and the acknowledgment changing "grr" to "growled"; the trial recording preserving the testimony, Defendant Maldonado's findings, verdict, and oral sentence; the August 7 sentencing document with Plea and Judgment blank and the drone condition written in; Defendant Maldonado's October 31 document purporting to correct the missing fields; and the State's answer acknowledging that the drone condition was omitted from the oral pronouncement. These materials documented the defects in the conviction and sentencing record that

Defendant Metcalf proceeded to affirm.

**(b) Docket or case number:**

Pima County Superior Court No. CR20255329-001;

Tucson City Court No. CM25002372.

**(c) Result:**

On December 16, 2025, with that record before him, Defendant Metcalf affirmed both the conviction and the sentence. He then remanded "for further action, if any, as appropriate." His order identified no defect requiring resentencing and did not direct it. A subsequent document required "resentencing after appeal," and Defendant Maldonado held that proceeding on December 30, 2025. It produced a new sentencing document containing the previously missing

adjudicative fields, the sentence, and the now-pronounced drone condition.

(d) Date of result:

December 16, 2025. The Tucson City Court Case Summary recorded the appellate result on December 18, 2025.

**(e) Grounds raised:**

The opening and reply memoranda challenged the legal and evidentiary sufficiency of the conviction under A.R.S. § 13-2904(A)(1) as construed by Arizona authority. They raised the First Amendment and due-process consequences of convicting on the recorded conduct; compared the juvenile's recorded "grr" with Defendant Sublette's report and the State's characterization; challenged probable cause;

and challenged the denial of appointed counsel and a jury trial.

The reply also challenged the non-standard drone condition in the August 7 written sentence. The State's answer acknowledged that the condition was included in writing but "omitted ... during its oral pronouncement." State's Appellee's Answering Memorandum, p. 5 n.3 (Nov. 5, 2025).

Record references: Appellant's Opening and Reply Memoranda; Defendant Hammock's extension request, answering memorandum, and request to exceed the page limit; Defendant Klotz's extension orders; Defendant Metcalf's November 18 ruling and December 16 Order, No. CR20255329-001; Tucson City Court Case Summary.

**9. Did you appeal to the Arizona Supreme Court?**

No.

Questions 9(a)–(e): Not applicable. As explained in Question 8, A.R.S. § 22-375 provided no further ordinary direct appeal from the Superior Court's decision on the claims raised in this municipal-court case..

10. Did you file a petition for certiorari in the United States Supreme Court?

No.

Questions 10(a)–(e): Not applicable.

**11. Other state-court filings concerning the judgment:**

Yes.

**(a) Motion to Vacate Conviction**

Filed December 30, 2025, in Tucson City Court, CM25002372, the same day as resentencing. The motion became ripe when resentencing occurred. Defendant Maldonado denied it as "untimely" on January 20, 2026. (Tucson City Court, Orders of the Court, Jan. 20, 2026.)

**(b) Petition for Post-Conviction Relief**

Filed in Tucson City Court, CM25002372. The petition raised actual innocence: the conduct established by the record did not satisfy the charged offense. Defendant Maldonado denied it on April 2, 2026, by applying Rule 33.1(h). Her order expressly states that Kline did not plead guilty or no contest and was found guilty at trial—the circumstances governed by Rule 32, not Rule 33. The denial relied on the wrong rule number instead of resolving the actual-innocence claim under

the rule applicable after trial. (Tucson City Court, Orders of the Court, Apr. 2, 2026; Ariz. R. Crim. P. 32.1, 33.1.)

**(c) Petition for Review From Denial of Post-Conviction Relief**

Submitted following the April 2 denial for review by the appellate court. On April 14, 2026, Defendant Maldonado—the same magistrate whose denial was challenged—denied the petition herself. Her stated reason was that its eight issues "have been adjudicated, by the trial court at the time of trial or through subsequent orders, and by the Superior Court through appeal." (Tucson City Court, Orders of the Court, Apr. 14, 2026.)

The petition for review was submitted through Tucson City Court for appellate review. A.R.S. § 13-4239(C), (F)–(G) provides for transmission of the petition and record to the appellate court and assigns the review decision to that court.

Defendant Maldonado's April 14 denial was issued by the judicial officer whose ruling was under review, rather than by the reviewing court.

## 12. GROUNDS FOR RELIEF

### COMMON STATUTORY AND RECORD PREDICATE

The single charge tried in CM25002372 was disorderly conduct under A.R.S. § 13-2904(A)(1): engaging in fighting, violent, or seriously disruptive behavior with the required intent or knowledge concerning disturbance of the peace.

The juvenile's account on Sublette's body-worn camera was played during trial. She described Kline parking at "his sidewalk," getting out, saying "grr," and later getting back into his car and driving. Trial Audio [01:19:29–01:20:19]. Sublette's written report instead described "growling" and following her as she ran

home. At trial, Sublette acknowledged that she had described "grr" and that he documented it as "growled." Id. [01:21:07–01:21:12].

Each account must be tested independently. Neither the juvenile's BWC account nor the report, even taken entirely as written, identifies fighting or violence. Neither identifies conduct meeting the charged subsection's requirement of seriously disruptive behavior merely by describing a vocalization, movement in a car, and the juvenile's fear. The differences between the accounts matter to the reliability of the report, but the statutory defect does not depend on resolving those differences in Kline's favor.

## GROUND ONE: FOURTEENTH AMENDMENT — ELEMENT-ARY, MY DEAR WATSON

(a) Supporting facts and statutory requirements:

A.R.S. § 13-2904(A) requires intent to disturb the peace or quiet of a neighborhood, family, or person, or knowledge of doing so, together with one of six forms of conduct:

1. Fighting, violent, or seriously disruptive behavior.
2. Unreasonable noise.
3. Abusive or offensive language or gestures likely to provoke immediate physical retaliation.
4. A protracted commotion, utterance, or display intended to prevent the business of a lawful meeting, gathering, or procession.
5. Refusal to obey a lawful order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard, or other emergency.
6. Reckless handling, display, or discharge of a deadly weapon or dangerous instrument.

The charge tried in CM25002372 was subsection (A)(1). The State had to establish qualifying conduct and the required mental state. A display of extreme fear does not replace either element.

## The fifty-five-year history of limiting construction

Arizona's limits on disorderly-conduct law reach back to the predecessor statute. In State v. Starsky, 106 Ariz. 329, 331–33, 475 P.2d 943, 945–47 (1970), the Arizona Supreme Court addressed vagueness and First Amendment challenges to former A.R.S. § 13-371. In upholding the statute, it discussed a limiting interpretation connecting tumultuous or offensive conduct to violence or conduct likely to incite violence, preserving the distinction between punishable disturbance and protected expression.

In State v. Johnson, 112 Ariz. 383, 385, 542 P.2d 808, 810 (1975), the Arizona Supreme Court assessed noise against a person of ordinary sensitivities, rather than a supersensitive or hypercritical individual. The inquiry concerned substantial interference with the reasonable person in the circumstances. Johnson expressly relied on Starsky.

In In re Julio L., 197 Ariz. 1, ¶¶ 10–13, 3 P.3d 383 (2000), the Arizona Supreme Court construed the subsection charged here. Applying ejusdem generis, it restricted seriously disruptive behavior to conduct comparable to fighting or violence, or liable to provoke fighting or violence in others and thereby threaten the continuation of an event, function, or activity. Profanity directed at a principal and kicking over a chair nevertheless failed to meet that statutory threshold. Id. ¶¶ 3, 11–13.

These decisions established the constitutional boundaries, the ordinary-sensibilities standard for noise, and the specific

construction of seriously disruptive behavior. Their history extended across more than five decades when Defendants Sublette and Stout responded on January 20, 2025.

The law governed their assessment of the reported conduct. It continued to govern the prosecution, Defendant Maldonado's adjudication, and Defendant Metcalf's appellate review. Each was obligated to apply the law governing the exercise of their authority. The statutory boundaries did not change as the matter passed from one stage to the next.

Exercise in creative writing

| What Kline said — BWC | What the juvenile said — BWC | What Defendant Sublette wrote — report |
|---|---|---|
| "Yes, I was driving my car. I drove right up the block to get a tool." "At my house." | "I saw the guy's car like pull up... this is his sidewalk I was on the other sidewalk." | "12-year-old [Redacted] was walking in her home neighborhood." "When James Kline |

| | | |
|---|---|---|
| | | saw [REDACTED], he exited the vehicle..." |
| "There was a [REDACTED] across the street, looked at me weird. And I said, 'Grr.'" | "He grr'd at me." | "Began 'growling' at [Redacted]." |
| "And then I got my tool and I drove back here." | "I was like around the park and then I saw him get back in his car."\| | "James Kline then got into his vehicle and began to follow Jaslen Cuevas as she ran home." |

Record references: Defendant Sublette's report and body-worn-camera recording; juvenile's recorded account played at trial, Trial Audio [01:19:29–01:20:19]; Defendant Sublette's acknowledgment that he documented "grr" as "growled," id. [01:21:07–01:21:12].

The differences appear in the accounts themselves. The statutory defect remains even accepting every word of Defendant Sublette's report as true.

The report describes no fighting or violence and identifies no conduct meeting Julio L.'s construction of seriously disruptive behavior. It establishes no unreasonable noise measured against a person of ordinary sensitivities under Johnson, and no language or gestures likely to provoke immediate physical retaliation. It describes no interference with a lawful gathering, refusal of a qualifying emergency dispersal order, or reckless weapon conduct. Its description of the juvenile's reaction supplies no facts establishing the required intent or knowledge.

Even on its own terms, the report does not establish disorderly conduct under any alternative of A.R.S. § 13-2904(A).

A crime was named. The conduct described did not establish its elements.

The trial supplied no missing qualifying conduct

There was no prior history of interactions between Kline and the juvenile. Asked what frightening conduct she had previously seen Kline perform, she answered, “Um, I don’t know. Nothing.” Trial Audio [53:19–53:24]. Her mother likewise testified: “You hadn’t done anything to me or anybody until that one day.” Id. [01:06:02].

The juvenile confirmed that she froze before Kline spoke. Id. [45:01–45:06]. The subsequent question identified the circumstances of that reaction: Kline was merely pulling up to his own house. Asked how he could be so frightening that she “froze in terror behind that bush” while he was arriving at his residence, she answered: “Because in real life it doesn’t look like it’s 75 ft away.” Id. [45:50–46:10].

Read together, those exchanges establish the sequence. No prior interaction supplied a threatening history. Neither witness identified prior frightening conduct. Kline was arriving at his own

residence. The juvenile's display preceded his expression. Her answer about perceived distance identified no threatening act explaining why she froze in terror behind the bush.

Her testimony about waiting to see whether Kline would get out of his car concerned an ordinary act upon arrival at his own home. It identified no threatening conduct.

Asked whether "grr" itself was scary, she answered, "I don't know." Id. [52:05]. Asked where her fear came from, she answered, "My spirit." Id. [53:30–53:44].

The absence of prior frightening conduct, Kline's ordinary arrival at his own home, the approximately seventy-five-foot separation, the preceding display of extreme fear, and those answers must be considered together. They identify no threatening act producing the initial display.

That unwarranted and offensive display was what offended Kline and prompted his responsive expression. The chronology places the display first and his reaction afterward.

The same combined circumstances supply no unreasonable noise under Johnson's ordinary-sensibilities standard. The record identifies a brief vocalization across the street, without facts establishing substantial interference with a person of ordinary sensitivities. The displayed reaction supplies no objective measure of unreasonable noise.

The factfinder's findings acknowledged that sequence

Defendant Maldonado read the charged subsection at the close of trial. Id. [01:31:53–01:32:19]. She then stated:

"It may be that her peace was already disturbed when she got there."

She said that it "really doesn't make a difference," and continued:

"If her peace was already disturbed when she got there, then it was disturbed from whatever outside thing."

Id. [01:32:39–01:32:53].

Those statements must be read with the record-supported facts: the juvenile's display occurred while Kline was merely arriving at his own house, before his expression, with no prior frightening conduct identified. Defendant Maldonado also described the juvenile as appearing afraid "for no reason," identified Kline as offended by that reaction, and found that his response increased the juvenile's fright. Id. [01:32:58–01:34:25].

The testimony and findings connect the same events. The juvenile displayed extreme fear at Kline's ordinary arrival. Kline was

offended by that unwarranted display and reacted. Defendant Maldonado's acknowledgment of a preceding disturbance from an outside source addressed facts already established by the testimony.

A preceding disturbance could not have been caused by Kline's subsequent expression. The separate question was whether his response constituted the conduct prohibited by subsection (A)(1), with the required intent or knowledge.

The findings identified no fighting, violence, or seriously disruptive behavior within Julio L.'s construction. They identified offense taken by Kline and a responsive vocalization. The finding that his response increased the juvenile's fright supplied no conduct comparable to fighting or violence, or liable to provoke fighting or violence and threaten an event, function, or activity. The connected sequence supplied no proof of the required mental state beyond a reasonable doubt.

The source and chronology of the preceding display mattered. Saying they "really don't make a difference" did not establish the missing elements.

Defendant Maldonado nevertheless entered a guilty finding. Id. [01:34:07–01:34:25].

The conviction Defendant Metcalf affirmed

Under "Sufficiency of the Evidence," Defendant Metcalf reviewed Defendant Maldonado's findings for clear error and concluded: "Accordingly, this Court must defer to the factual findings of the trial court." He affirmed the conviction on December 16, 2025.

Legal sufficiency required de novo review. State v. West, 226 Ariz. 559, 562, ¶¶ 15–16, 250 P.3d 1188, 1191 (2011). That inquiry viewed the evidence in the light most favorable to the prosecution while independently determining whether a rational factfinder could find

every required element beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).

The findings to which Defendant Metcalf deferred included the juvenile appearing afraid "for no reason," the acknowledged preceding disturbance, Kline taking offense, and his responsive expression. Accepting that factual sequence did not establish the charged offense. It required applying the statute and its binding construction to determine whether those facts, considered with the entire trial evidence, proved the elements.

Defendant Metcalf's stated obligation to defer to factual findings could not replace that independent legal inquiry. The factfinder's findings identified no qualifying conduct, and the entire trial evidence supplied none.

That was the conviction he affirmed.

(b) Federal legal basis:

The Fourteenth Amendment requires proof beyond a reasonable doubt of every fact necessary to constitute the charged offense. In re Winship, 397 U.S. 358, 364 (1970). Under Jackson, the inquiry concerns the entire trial evidence viewed in the light most favorable to the prosecution. 443 U.S. at 319.

Even under that favorable view, no rational factfinder could find fighting, violent, or seriously disruptive behavior within subsection (A)(1)'s binding construction, together with the required intent or knowledge, beyond a reasonable doubt.

The juvenile's display, her testimony attributing fright to the vocalization, and the finding that Kline's response increased her fright supplied no missing qualifying conduct. The constitutional defect persists even accepting that testimony and finding. The State

still had to prove the conduct and mental state that constituted the charged offense.

The comparison with all six statutory alternatives demonstrates the defect in the report's factual account. This federal sufficiency claim concerns subsection (A)(1), the offense actually tried, and rests on the entire trial evidence.

Federal habeas review requires deference both to the factfinder's permissible conclusions and to the state reviewing court's adjudication. Coleman v. Johnson, 566 U.S. 650, 651, 655–56 (2012). This ground satisfies that demanding standard because the established conduct, even viewed favorably to the prosecution, supplied no rational basis for finding the charged elements. Defendant Metcalf's affirmance preserved that evidentiary deficiency. It was an objectively unreasonable application of Jackson under 28 U.S.C. § 2254(d)(1).

The report supplied no qualifying conduct. The trial supplied none. The factfinder's findings supplied none. Defendant Metcalf affirmed the resulting conviction.

The conviction violates the Fourteenth Amendment. A determination of constitutionally insufficient evidence requires relief from that conviction and bars another trial to supply the missing proof. Burks v. United States, 437 U.S. 1, 18 (1978).

GROUND TWO: FIRST, FOURTH, AND FOURTEENTH AMENDMENTS — DISTURBING THE PEACE???

(a) Supporting facts:

Ground One sets forth the statutory requirements, their longstanding limiting construction, and the connected testimony and findings. Those facts and authorities are incorporated here.

Kline arrived at his own residence to retrieve a tool. The juvenile's unwarranted and offensive display of extreme fear preceded his expression. Defendant Maldonado identified Kline as offended by that display and reacting to someone appearing afraid "for no reason." His brief vocalization expressed that reaction. Trial Audio [45:01–45:06; 45:50–46:10; 01:32:58–01:34:25].

Defendant Sublette arrested Kline without a warrant on January 20, 2025. Before the arrest, Kline told him that he had arrived at his own home to retrieve a tool and had said "grr" after the juvenile looked at him. Defendant Sublette testified that he spoke with a witness by telephone and then determined that probable cause existed. Id. [17:26–17:45]. His in-person contact with Defendant Cuevas occurred after the arrest. Id. [18:30–18:45].

Defendant Sublette acknowledged that he did not observe Kline running around yelling or growling at others and agreed that the scene appeared peaceful. Id. [20:03–20:44].

His report described "growling" and following the juvenile in a vehicle. Ground One compares that account with the recorded statements and applies the statute to the report on its own terms. Even accepting the written account as true, it supplied no qualifying conduct under A.R.S. § 13-2904(A).

The juvenile's subsequently recorded account placed Kline at "his sidewalk" and identified the expression as "grr." Id. [01:19:29–01:20:19]. Defendant Sublette acknowledged that she described "grr" and that he documented it as "growled." Id. [01:21:07–01:21:12].

The constitutional protection concerns the expression in its established circumstances. Changing its description from "grr" to

"growled" supplied neither fighting words nor a true threat. The record identified no expression likely to provoke immediate physical retaliation and no serious communication of an intent to commit unlawful violence.

The arrest began the State's punishment of that expression. The prosecution continued it. Defendant Maldonado entered the conviction, Defendant Metcalf affirmed it, and probation continues the resulting restraint.

(b) Federal legal basis:

The First Amendment, applicable to the State through the Fourteenth Amendment, protects expression of emotion as well as ideas. A breach-of-the-peace statute cannot criminalize expression merely because its manner offends a listener. Cohen v. California, 403 U.S. 15, 18–26 (1971).

The constitutional boundary requires examination of the expression and its circumstances. Fighting words concern expression likely to provoke immediate violence, rather than language that merely produces offense or discomfort. Gooding v. Wilson, 405 U.S. 518, 523–28 (1972). True threats concern serious expressions conveying an intent to commit unlawful violence; punishment also requires the constitutionally necessary subjective mental state. Counterman v. Colorado, 600 U.S. 66, 74–82 (2023).

Kline's brief vocalization expressed offense at the preceding display. The connected record establishes no fighting words, true threat, or qualifying disruptive conduct accompanying that expression. The juvenile's displayed reaction did not supply the constitutional requirements missing from the expression and circumstances.

Ground One establishes the statutory deficiency. This ground establishes the distinct First Amendment consequence: the State

punished protected expression through prosecution, conviction, and probation.

The Fourth Amendment separately required probable cause at the time of arrest. Beck v. Ohio, 379 U.S. 89, 91 (1964). The information described above supplied no factual basis for the disorderly-conduct arrest under the governing statutory construction. Later-acquired information could not retroactively justify that seizure.

Relief from the conviction rests here on the State's unconstitutional punishment of protected expression. The Fourth Amendment arrest violation identifies the initial seizure in that sequence. The First and Fourteenth Amendment violation reaches the judgment and the continuing probation imposed for the expression.

GROUND THREE: SIXTH AND FOURTEENTH AMENDMENTS —

COUNSEL ENTITLED, REQUESTED, DENIED, THEN "DEEMED WAIVED"

(a) Legal basis for appointment and supporting facts:

Arizona Rule of Criminal Procedure 6.1(b)(1)(A) provides appointed counsel for an indigent defendant in a criminal proceeding that may result in punishment involving a loss of liberty. Rule 6.1(b)(2) separately authorizes appointment in other criminal proceedings when required by the interests of justice.

The charged offense was a class 1 misdemeanor carrying up to six months in jail, a $2,500 base fine, and three years of probation. A.R.S. §§ 13-2904(B), 13-707(A)(1), 13-802(A), 13-902(A)(5). The proceeding ultimately produced twenty-four months of unsupervised probation with conditions restricting Kline's conduct.

Kline's April 4, 2025 motion invoked his due-process rights and included, among other requests, appointment of counsel and opposition to dismissal. He expressly identified his inability to afford counsel. His opposition to dismissal explained that dismissal without adjudication would leave the accusation unresolved and the reputational harm uncorrected. That opposition can be recognized as an interests-of-justice argument supporting appointment under Rule 6.1(b)(2).

Counsel requested and denied

Defendant Maldonado denied appointed counsel on April 24, 2025. Her order stated:

"Request for Appointment of Counsel. — The State is not seeking jail. No attorney is appointed. Motion Denied."

Rule 6.1 required application of its appointment standards. The prosecution's stated preference did not resolve the separate interests-of-justice basis presented by Kline's motion. The written ruling identified no determination addressing that basis and did not explain whether an enforceable limitation excluded imprisonment from the proceeding.

The same order disposed of the opposition to dismissal as follows:

"Opposition to Dismissal of the Case. — The State does not move to dismiss. The matter is moot."

That disposition addressed whether dismissal was then requested. It did not address the significance of Kline's explanation as an interests-of-justice basis for representation.

The order also recorded that the State requested a continuance to contact the witnesses "to determine whether the case is viable."

Defendant Maldonado granted additional time over Kline's objection while denying the counsel he had requested to defend against the accusation.

Record references: Kline's April 4, 2025 motion; Tucson City Court, Orders of the Court, April 24, 2025.

Denied representation, then "deemed waived"

The June 24 Pretrial Statement and Order stated:

"DEFENDANT IS DEEMED TO HAVE WAIVED ATTORNEY IF HE APPEARS FOR TRIAL WITHOUT ONE."

At the beginning of the August 7 proceeding, Kline expressly stated:

"By my participation in this trial, I do not wish to waive any rights. I do not wish to waive my right to an attorney. I do not wish to waive my right to a jury trial."

Trial Audio [08:54–09:12].

Appointment had been denied. Kline faced the prosecution without the attorney he had requested and conducted his own defense, questioned witnesses, and presented the body-worn-camera recording. When asked whether he wished to testify, he answered that he did not. Id. [01:25:04–01:25:22].

The August 7 written sentencing entry nevertheless contained a certification concerning knowing, voluntary, and intelligent waivers.

The sequence preserves a request for representation, its denial, an advance declaration assigning waiver to appearance without an

attorney, and an express refusal to waive counsel. The subsequent certification characterized the resulting self-representation as voluntary despite that recorded non-waiver.

What the denial facilitated

Ground One identifies the statutory requirements, testimony, and factual findings. Defendant Maldonado heard the evidence, acknowledged the preceding disturbance and the juvenile appearing afraid "for no reason," identified Kline as offended by that display, and nevertheless entered a guilty finding without identifying fighting, violence, or seriously disruptive behavior within the charged subsection's binding construction. Trial Audio [01:32:39–01:34:25].

The denial left Kline without defense representation throughout that adjudication. Counsel's responsibilities included applying the governing construction to the evidence, seeking acquittal when the

State failed to establish the offense, and preserving the constitutional objections.

The absence of counsel continued through the sentencing sequence addressed in Ground Four. The written sentencing document contained an unpronounced, non-standard probation condition:

"Do not fly drones over victim's residence."

That condition had no evidentiary nexus in the preceding case history: charging materials, pretrial proceedings, trial evidence, testimony, or sentencing arguments. Defendant Maldonado omitted it from the oral pronouncement.

The document finished printing at [01:40:01]. Defendant Cuevas began the statement requested by Defendant D'Arquéa and permitted by Defendant Maldonado at [01:40:02], introducing the subject of drones at approximately [01:40:08]. The condition was

already contained in the completed document before its subject entered the recorded proceeding.

The absence of an evidentiary nexus, the unpronounced condition, and that chronology must be examined together with the adjudication described in Ground One. They provide the connected evidentiary basis for ground four's claim of predetermined adjudication in collusion with an outside source. The denial of counsel removed the requested defense representation throughout the events supporting that claim.

The consequences continued through appellate and post-conviction proceedings

On October 31, 2025, Defendant Maldonado issued a separate document supplying the omitted Plea and Judgment information as a correction of "clerical error." She left the unpronounced drone condition unaddressed.

The State subsequently acknowledged that the written sentence included the condition and that Defendant Maldonado omitted it from the oral pronouncement. State's Appellee's Answering Memorandum, p. 5 n.3 (Nov. 5, 2025).

With those materials and the trial recording before him, Defendant Metcalf affirmed both the conviction and sentence on December 16, 2025. As addressed in Ground One, his deference to factual findings did not establish that the recorded conduct satisfied the charged offense.

The December 30 proceeding produced a new sentencing document containing the adjudicative information and the now-pronounced drone condition. The Case Summary records the probation period as beginning on that date.

Kline's December 30 motion to vacate was denied as untimely on January 20, 2026. His petition for post-conviction relief was denied on April 2 under Rule 33 despite the order's acknowledgment that he was found guilty at trial. On April 14, Defendant Maldonado herself denied the petition seeking review of her own ruling. The State filed its answer to the post-conviction petition on April 28, after both denials.

Record references: Tucson City Court, Orders of the Court, Oct. 31, 2025, Jan. 20, Apr. 2, and Apr. 14, 2026; December 30 sentencing document; Defendant Metcalf's December 16 decision; State's answering memoranda; Tucson City Court Case Summary.

The denial must be examined through this entire sequence. It left Kline without the requested defense representation during the adjudication and sentencing events, and the resulting conviction and restraint were subsequently preserved through appellate and

post-conviction dispositions. The purported waiver did not alter how that absence of representation arose.

(b) Federal legal basis:

Where the constitutional right to counsel applies, waiver must be knowing, voluntary, and intelligent. An informed relinquishment must appear in the record; waiver cannot be presumed from appearance without counsel. Carnley v. Cochran, 369 U.S. 506, 516 (1962); Faretta v. California, 422 U.S. 806, 835 (1975).

Appearing without an attorney after appointment was denied was not a choice to surrender representation. Kline requested appointed counsel and expressly refused to waive representation. His conduct of the defense after appointment was denied did not establish an informed election of self-representation.

The advance "deemed waived" declaration replaced an examination of informed choice with a consequence assigned to appearing without counsel. The subsequent written certification must be assessed against the express non-waiver preserved in the recording. A certification does not supply the informed relinquishment missing from that sequence.

The Arizona appointment provisions and the federal constitutional entitlement require application of their respective standards. Scott v. Illinois, 440 U.S. 367, 373–74 (1979), governs federal appointment entitlement based on actual imprisonment; Alabama v. Shelton, 535 U.S. 654, 662, 674 (2002), extends that protection to suspended imprisonment. Rule 6.1(b) separately supplies Arizona's appointment standards. The probation restraint establishes an ongoing consequence of the conviction, while federal appointment entitlement must be established under the governing federal authorities.

The denial of appointment and the purported waiver are distinct acts. The validity of either must be established under the governing standard; the purported waiver cannot serve as a substitute justification for the preceding denial.

The denial, purported waiver, and subsequent proceedings must be assessed together. Ground One addresses the conviction's evidentiary insufficiency. ground four addresses the adjudication and sentencing chronology supporting outside coordination. This ground identifies the preceding denial of requested representation throughout those events and the certification that subsequently characterized the resulting self-representation as voluntary.

Counsel was requested. Appointment was denied. Kline expressly refused to waive representation. He nevertheless faced the adjudication and sentencing without counsel, and the resulting conviction and restraint survived the subsequent appellate and post-conviction proceedings.

## GROUND FOUR: FOURTEENTH AMENDMENT — PREDETERMINED ADJUDICATION IN COLLUSION WITH AN OUTSIDE SOURCE

(a) Supporting facts:

Defendant Maldonado was the sole factfinder at the August 7, 2025 bench trial. After hearing the testimony and evidence, she stated that the juvenile's peace may already have been disturbed when Kline arrived, attributed that disturbance to "whatever outside thing," and said that it "really doesn't make a difference." Trial Audio [01:32:39–01:32:53]. The juvenile had confirmed that she froze before Kline spoke. Id. [45:01–45:06]. Defendant Maldonado nevertheless entered a guilty finding. Id. [01:34:07–01:34:25].

The August 7 Sentencing Minute Entry imposed punishment while leaving its Plea and Judgment fields blank. It also contained a manually entered, non-standard probation condition: "Do not fly drones over victim's residence." Defendant Maldonado did not include that condition in her oral pronouncement. The State later acknowledged both that the written order included it and that Defendant Maldonado omitted it from the oral pronouncement. State's Appellee's Answering Memorandum, p. 5 n.3 (Nov. 5, 2025).

The condition had no evidentiary nexus anywhere in the case history preceding that written sentence. No drone activity involving Kline had been established in the charging materials, pretrial proceedings, trial evidence, testimony, or sentencing arguments. Defendant Maldonado did not pronounce a drone restriction before directing

Kline to collect his paperwork. Trial Audio [01:38:29–01:39:46].

The trial recording then preserves the sequence at the close of sentencing. At [01:39:46], Defendant Maldonado told Kline to come forward for his paperwork. At [01:39:51], the sentencing document began printing. While it printed, Defendant D'Arquéa requested permission for Cuevas to speak, and Defendant Maldonado granted the request. The document finished printing at [01:40:01]. Cuevas began speaking at [01:40:02] and introduced "drone" at approximately [01:40:08]. The written condition was already on the completed sentencing document before its subject entered the recorded proceeding.

On October 31, 2025, Defendant Maldonado issued a document attributing the blank Plea and Judgment fields

to clerical error and supplying the not-guilty plea and trial judgment. She did not remove or address the unpronounced drone condition in the same August 7 entry. That original entry remains in the record as issued, with the blank fields, completed punishment, and drone condition.

Defendant Metcalf had the August 7 entry, the trial recording, the October 31 correction, and the State's express acknowledgment of the oral omission before him. On December 16, 2025, he affirmed both the conviction and the sentence. After that affirmance, a document required "resentencing after appeal." Defendant Maldonado's December 30 proceeding produced a new sentencing document containing the previously missing adjudicative information and the now-pronounced drone condition. The Case Summary records the probation period as beginning on December 30, 2025.

Legal basis:

The sequence cannot be explained by treating each record in isolation. Defendant Maldonado entered a guilty finding after acknowledging that the juvenile's peace may already have been disturbed by an outside cause. The August 7 written sentence then contained a non-standard condition with no evidentiary nexus in the preceding case history and no place in the oral pronouncement. That document finished printing before Cuevas introduced its subject in the recorded proceeding.

The October 31 correction bears directly on whether the condition was an inadvertent entry. Defendant Maldonado identified and corrected omissions concerning Plea and Judgment in the August 7 document. She left the unpronounced drone condition in that same document

without correction. The State subsequently acknowledged the difference between the written condition and the oral sentence.

Together, the trial findings, the document's contents, the audio chronology, and the selective October 31 correction support the inference stated in this ground: the written sentencing result was predetermined in coordination with a source outside the adjudicated evidence. The resulting probation restraint cannot acquire constitutional authority from a condition placed in writing without an evidentiary nexus or oral pronouncement. Nor did Defendant Metcalf's affirmance change the contents or sequence of the records before him. The December 30 document supplied an appearance of completeness after that affirmance; it did not alter what occurred on August 7.

GROUND FIVE: FOURTEENTH AMENDMENT —

A BIG PILE OF CUMULATIVE... ERROR??

(a) Supporting facts and connected sequence:

Kline incorporates the supporting facts, record references, and constitutional claims in Grounds One through Four. Those grounds describe connected events: the seizure and prosecution for conduct that did not satisfy the charged statute; denial of requested defense representation; conviction without proof of the required elements; and a written probation condition having no evidentiary nexus in the preceding case history. The appellate and post-conviction proceedings then preserved the resulting conviction and restraint.

The seizure and prosecution supplied the foundation. Ground One tests the reported conduct against the statute and its binding construction. Even accepting Defendant Sublette's report as written, it identified no fighting, violence, or seriously disruptive behavior within A.R.S. § 13-2904(A)(1). Ground Two identifies the warrantless

arrest and the prosecution of Kline's brief responsive expression. The State carried that accusation forward without supplying the qualifying conduct missing from its foundation.

The denial of counsel removed the requested defense representation. Kline's April 4 motion invoked his due-process rights and included, among other requests, appointment of counsel and opposition to dismissal. He identified his financial inability to retain counsel and explained why an adjudication mattered to resolving the accusation and resulting reputational harm. Defendant Maldonado denied appointment, citing the State's decision not to seek jail, without addressing the interests-of-justice significance of that explanation.

The June 24 order subsequently declared that appearance for trial without an attorney would be "deemed" a waiver. Kline expressly refused to waive representation at the beginning of trial. Nevertheless, he had to conduct his own defense, question witnesses, and present the body-worn-camera recording. The written

sentencing entry then certified knowing, voluntary, and intelligent waivers. That certification maintained an appearance of voluntary self-representation despite the preceding denial and the express non-waiver preserved in the recording.

The denial mattered to what followed. Counsel's duties would have included confronting the missing statutory proof, seeking acquittal, objecting to constitutional violations, examining the sentencing record, and preserving those matters for review. Kline faced the adjudication and sentencing without the requested attorney responsible for performing those functions.

The adjudication supplied no missing statutory proof. Ground One identifies the testimony establishing that the juvenile's display preceded Kline's expression, that no prior frightening conduct was identified, and that Kline was arriving at his own residence. Defendant Maldonado described the juvenile as appearing afraid "for no reason," identified Kline as offended by that reaction, and

acknowledged that the juvenile's peace might already have been disturbed by "whatever outside thing." She nevertheless entered a guilty finding without identifying conduct satisfying the charged subsection's binding construction. Trial Audio [01:32:39–01:34:25].

The preceding denial of counsel left Kline to confront that failure of proof himself. The resulting guilty finding then supplied the asserted authority for punishment.

The written punishment introduced a condition without an evidentiary nexus. Ground Four identifies the manually entered, non-standard probation condition:

"Do not fly drones over victim's residence."

No evidentiary nexus for that condition appeared in the preceding charging materials, pretrial proceedings, trial evidence, testimony, or

sentencing arguments. Defendant Maldonado omitted it from the oral pronouncement.

The sentencing document finished printing at [01:40:01]. Defendant Cuevas began the statement requested by Defendant D'Arquéa and permitted by Defendant Maldonado at [01:40:02], introducing drones at approximately [01:40:08]. The completed written sentence already contained the restriction before Cuevas introduced its subject.

Read together with the absence of an evidentiary nexus and the adjudication described in Ground One, that chronology supplies the evidentiary basis for Ground Four's claim of predetermined adjudication in collusion with an outside source. The denial of counsel left Kline without defense representation throughout that sequence.

The subsequent proceedings preserved the accumulated result. Defendant Maldonado's October 31 document supplied the omitted

Plea and Judgment information but left the unpronounced drone condition unaddressed. The State then expressly acknowledged that the condition appeared in writing but had been omitted from the oral pronouncement. State's Appellee's Answering Memorandum, p. 5 n.3 (Nov. 5, 2025).

With those materials and the trial recording before him, Defendant Metcalf affirmed both the conviction and sentence on December 16. His deference to factual findings did not supply the statutory elements missing from the established conduct.

The December 30 proceeding produced a new sentencing document containing the adjudicative information and the now-pronounced drone condition. The Case Summary records that date as the beginning of the probation period.

Kline's December 30 motion to vacate was denied as untimely on January 20, 2026. His post-conviction petition was denied on April 2

under Rule 33 despite the order's acknowledgment that he had been found guilty at trial. On April 14, Defendant Maldonado herself denied the petition seeking review of her ruling. The State filed its answer to the post-conviction petition on April 28, after both denials.

These events must be considered in their relationship to one another. The accusation led to an uncounseled adjudication; that adjudication produced the challenged punishment; the written certification characterized compelled self-representation as voluntary; and subsequent proceedings preserved the conviction and restraint despite the documented defects.

(b) Federal legal basis and cumulative prejudice:

The Fourteenth Amendment guarantees a fundamentally fair trial. In Chambers v. Mississippi, 410 U.S. 284, 298, 302–03 (1973), the Supreme Court considered the combined effect of restrictions that

frustrated the defendant's ability to develop his defense and held that the resulting trial violated due process.

Applying Chambers, the Ninth Circuit recognizes that multiple trial errors can collectively deny due process even when an individual error would not independently require reversal. The inquiry examines their combined effect on the defense and the reliability of the verdict. Parle v. Runnels, 505 F.3d 922, 927–30 (9th Cir. 2007).

Here, the combined prejudice reached the central questions of the proceeding: whether Kline's conduct constituted the charged offense, whether he had the representation needed to defend against the accusation, and whether the adjudication rested on the evidence presented in court.

The denial of representation operated throughout the trial in which the State failed to supply qualifying statutory conduct. The purported waiver then characterized the consequences of that denial as Kline's

voluntary choice. The sentencing document and recorded chronology supply the further basis for the challenge to the adjudication's impartiality identified in Ground Four.

Kline therefore seeks review of the combined effect of the trial violations on his ability to defend and on the resulting guilty finding. His independent claims remain grounds for relief; their interaction supplies the additional cumulative due-process claim.

The appellate and post-conviction events complete the record of how that challenged judgment and its consequences were maintained. They did not supply the missing trial evidence, restore representation during the adjudication, or change the original sentencing chronology.

The accumulated prejudice concerned the foundation and outcome of the case. Kline faced prosecution without the requested defense representation, was convicted on evidence that failed to establish the

charged offense, and received punishment through the sequence challenged in Ground Four. The resulting conviction and probation remain the source of his restraint.

Considered together, the violations deprived Kline of a fundamentally fair adjudication under the Fourteenth Amendment. He requests relief from the conviction and resulting restraint on the independent grounds stated above and on their cumulative effect.

**13. Have you previously filed any petition, application, or motion in federal court regarding this conviction?**

Yes. On January 8, 2026, Kline filed a civil-rights action in the United States District Court for the District of Arizona, No. 4:26-cv-00018-JGZ-JR. The Second Amended Complaint, filed July 1, 2026, addresses the prosecution, adjudication, sentence, appeal, and resulting constitutional injuries. Kline's Motion for Judicial Acknowledgment of

Material Record Inaccuracy places the underlying criminal records before that court. The civil action remains pending. It is not a prior § 2254 petition. Kline has not previously filed a federal habeas petition challenging CM25002372..

**14. Do you have a petition or appeal now pending in any court as to this judgment?**

No. Kline filed a Petition for Post-Conviction Relief asserting actual innocence. On April 2, 2026, Defendant Maldonado denied it under Rule 33, although her order stated that Kline was found guilty at trial. Kline then filed a Petition for Review of that denial. On April 14, Defendant Maldonado herself denied the petition seeking review of her own decision. The City Prosecutor's Office filed its answer to Kline's post-conviction relief petition on April 28, after both denials..

**15. Do you have a future sentence to serve after completing this sentence?**

No. Kline has no other future sentence to serve.

Questions 15(a)–(d) are not applicable..

**16. Timeliness of petition**

The Superior Court affirmed the conviction and sentence on December 16, 2025. Tucson City Court then conducted the December 30 proceeding represented as resentencing. This petition is submitted less than one year after the direct-appeal decision. The state post-conviction proceedings are identified in Question 11. 28 U.S.C. § 2244(d).

**17. Relief required**

The trial record establishes no fighting, violent, or seriously

disruptive behavior under A.R.S. § 13-2904(A)(1), no disturbance attributable to conduct qualifying under that subsection, and no proof of the required intent or knowledge. Defendant Maldonado's stated findings supplied none of those elements. The resulting conviction rests on constitutionally insufficient evidence. Jackson v. Virginia, 443 U.S. 307, 319 (1979).

The writ must set aside the conviction and end the probation and conditions imposed under CM25002372. A determination that the evidence was insufficient bars another trial to supply the proof missing from the first. Burks v. United States, 437 U.S. 1, 18 (1978). The State's records must no longer maintain the conviction as authority for the resulting restraint.

The written sentencing record independently contains a drone condition omitted from the oral pronouncement. It also records a new probation start date after the Superior Court affirmed the original conviction and sentence. Neither an unpronounced

condition nor a later entry can supply lawful authority for restraint beyond the sentence imposed in court.

The record supplies the facts. The law provides the consequences. The Court must grant the writ and dispose of the matter as law and justice require. 28 U.S.C. §§ 2243, 2254.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 10 05 26

James David Kline

Petitioner, self-represented